**HARTMAN v. UNITED STATES et al.**

No. 444.

District Court, W. D. Missouri,
St. Joseph Division.

Jan. 8, 1948.

Floyd Sprague, of St. Joseph, Mo., for plaintiff.

Watkins & Watkins and Fred M. Wanger, all of St. Joseph, Mo., for defendants.

DUNCAN, District Judge.

Plaintiff, the widow of a deceased soldier, Addison Byron Hartman, instituted this suit against the United States and Belva Downing Hartman, mother of the deceased soldier, to establish her right to the benefits of a $10,000 National Service Life Insurance Policy, Certificate No. N–6 052815, issued on January 22, 1942.

At the time the policy was issued, Addison Byron Hartman was single, and he designated his mother, Belva Downing Hartman, as his beneficiary. At the time of his death the records of the Veterans Administration failed to show a change of beneficiary. Upon due investigation the Veterans Administration determined that the mother was entitled to the benefits. Thereupon this suit was brought alleging that subsequent to their marriage the insured changed the beneficiary, naming plaintiff as principal and the defendant as contingent beneficiary.

The United States disclaims any interest in the proceeds of the policy but insists that the beneficiary was not changed in the manner required by the Regulations. In this contention the defendants are in accord.

The question for determination is whether the insured intended to change the beneficiary, and, if so, whether or not his actions in carrying out his intention satisfied the requirements of the law.

In January 1942, while a member of the Armed Forces of the United States, Addison Byron Hartman made application for and was issued the policy herein described. On August 21, 1942, while stationed at Sumter, South Carolina, Hartman and the plaintiff were married. Ten days thereafter, on August 31st, the insured signed and executed what is now alleged to have been a change of beneficiary. The form signed by him was designated "W.D.,A. G.O., Form No. 41, March 1, 1941" and captioned "Designation of Beneficiary".[1] Above the caption there were written the words "Change In" with a typewriter. In

---

[1]

| | Change in Designation of Beneficiary | | |
|---|---|---|---|
| Name of designator | Hartman, Addison | Byron | |
| | (Last name) (First name) (Middle name) | | |
| | 20746406 | A/C, | A/C Det. |
| | (Army Serial No.) | (Grade and organization) | |

The person eligible to be my beneficiary are designated below:
1. Mrs. Iris Elaine Hartman (wife) Rosendale, Missouri

(Full name of wife; if no wife, or if she is deceased or divorced, so state) (Wife's full address)

2. None

(Full name and address of each minor child, and each dependent child over 21 years of age. If there are no children, so state. If the address is the same as the wife's so state. Do not repeat address)

said form, in the space designated "The persons eligible to be my beneficiary are designated below", Hartman inserted in his own handwriting "Mrs. Iris Elaine Hartman, (wife), Rosendale, Missouri". Following the printed words "In the event of my leaving no widow or child, or their decease before payment is made, I then designate as my beneficiary the relative whose name, relationship, and address are shown below: Mrs. Belva Hartman (mother), 107 East 4th Street, Maryville, Missouri".

In March 1943, after Hartman had been commissioned a lieutenant in the Air Corps and while he was stationed at Rosecrans Field, St. Joseph, Missouri, he again executed a "W.D.,A.G.O. Form No. 41, July 17, 1942", captioned "Designation or Change in Address of Beneficiary" [2] in which he stated his wife was his beneficiary and his mother was his contingent beneficiary. Both of these forms were sent to the Adjutant General and not to the Veterans Administration by the Camp Authorities before whom they were executed.

In September 1944 while stationed at

In the event of my leaving no widow or child, or their decease before payment is made, I then designate as my beneficiary the relative whose name, relationship, and address are shown below:

3. Mrs. Belva Hartman (Mother) 107 E. 4th St., Maryville, Missouri

(If designation of beneficiary is declined, designator must state in own handwriting: "I decline to designate any person as my beneficiary.")

In the event of the death or disqualification of the last-named dependent relative before payment is made, I then designate as my beneficiary the relative whose name, relationship, and address are shown below:

4. Miss Estella Jane Hartman (sister) 107 E. 4th St., Maryville, Missouri

(If beneficiary is named in line 3 but naming of alternate is declined, designator must state in own handwriting: "I decline to designate an alternate beneficiary.")

Over

Nearest relative Mrs. Belva L. Hartman          Mother
(Other than wife or minor child) (Name in full) (Relationship)
Address *

Person to be notified in case of emergency    Mrs. Iris E. Hartman          Wife
                                              (Name)          (Relationship)
Address *

Signature of designator    Addison          B.          Hartman
                    (First name) (Middle name) (Last name)
Witnessed at    Shaw Fld. Sumter, S. C.    on August 31, 1942
† Signature of witness    E. E. Doten
Name of witness typed    E. E. Doten, 2nd lt, Air Corps, Aviation Cadet Det, Shaw Fld, S. C.
                                              (Grade and organization)

* If one of the beneficiaries is the nearest relative or the person to be notified in case of emergency, the address need not be repeated.
† Should be witnessed by an officer or notary public.

W.D., A.G.O., Form No. 41          16–20169 U.S. Government
    March 1, 1941          Printing Office.

[2]          Designation or Change in Address of Beneficiary
Name of designator    Hartman, Addison          Byron
                    (Last Name) (First Name) (Middle Name)
                    0–793332          2nd Lt.    AC
                    (Army Serial No.)          (Grade and organization)

The persons eligible to be my beneficiary are designated below:

1. Iris Ray Hartman    107 East 4th Street, Maryville, Mo.

(Full name of wife; if no wife, or if she is deceased or divorced, so state)    (Wife's full address)

2.                              No children

(Full name and address of each minor child, and each dependent child over 21 years of age. If there are no children, so state. If the address is the same as the wife's so state. Do not repeat address.)

In the event of my leaving no widow or child, or their decease before payment is made, I then designate as my beneficiary the relative whose name, relationship, and address are shown below:

3. Mrs. Belva Downing Hartman (mother) 107 E. 4th, Maryville, Missouri

(If designation of beneficiary is declined, designator must state in own handwriting: "I decline to designate any person as my beneficiary.")

In the event of the death or disqualification of the last-named dependent relative before payment is made, I then designate as my beneficiary the relative whose name, relationship, and address are shown below:

4. Miss Estella Jane Hartman (sister) 110 W. Liberty, Sumter, S. Carolina

(If beneficiary is named in line 3 but naming of alternate is declined, designator must state in own handwriting: "I decline to designate an alternate beneficiary.")

Nearest relative    Mrs. Belva Downing Hartman    Mother

Wilmington, Delaware, the insured executed a will in which he devised and bequeathed his entire estate to his wife. About this time, that is, in 1944, the insured delivered to his wife a book entitled "The Army Woman's Handbook". In this book in a section devoted to "Vital Information" following the printed words "Government Insurance", the insured indicated in his own handwriting that he held a $10,000 certificate of Government Insurance and that his wife was the beneficiary. Shortly thereafter, at Nashville, Tennessee, Hartman executed and signed a form entitled "Personal Affairs Interviews, Hq. 20th Ferrying Group, A.T.C., Nashville, Tennessee" in which he again indicated that Iris Ray Hartman was the direct beneficiary and that Belva Downing Hartman was the contingent beneficiary.

In October 1944 at Dow Field, Maine, on a form captioned "Check List for Military Personnel" [3] Hartman indicated that he had not filled out A.G.O., Form No. 41 (Gratuity Beneficiary Record).

On November 11, 1944, while in military

---

(Other than wife or minor child) (Name in full) (Relationship)
Address *        107 E. 4th St., Maryville, Missouri
Person to be notified in case of emergency_____
          Mrs. Belva Downing Hartman          Mother
                (Name)                  (Relationship)
Address *    Same
Signature of designator        Addison        B.        Hartman
              (First name) (Middle initial) (Last name)
Witnessed at  Rosecrans Fld., St. Joseph, Mo. on March 6, 1943
† Signature of witness    /s/ Frank W. Peters
Name of witness typed     Frank W. Peters                2nd Lt., A.C.
                                        (Grade and organization)

* If one of the beneficiaries is the nearest relative or the person to be notified in case of
    emergency, the address need not be repeated.
† Should be witnessed by an officer or notary public.
W.D., A.G.O., Form No. 41                        16–20169–1
    July 17, 1942
3                        Check List for Military Personnel
Ship No. ——                                Date  16 Oct 1944
                                        Intv. Initials ——
Rank  1st Lt. Name  Hartman, Addison B.                ASN 0–793 332
A check up on my personal financial affairs with the Personal Affairs Officer at Station No. 3,
NAW, ATC, Dow Field, Bangor, Maine, shows that I

| Have | Have Not |
|------|----------|
| ✕ | |
| | |
| ✕ | |
| | ✕ |

1. Bought $10,000 National Service or U.S. Government Life Insurance and Allotted $6.70 of my Army pay for the monthly premium.

2. Sent a letter, dated 9/16/44, to the Adjutant General listing the names of my commercial life insurance companies.  (Officers only)

3. Allotted $——— of my Army pay for monthly premiums on life insurance with:

                        Prudential
$———————  ———————————————Life Insurance Co.
$———————  ———————————————Life Insurance Co.
$———————  ———————————————Life Insurance Co.

| Have | Have Not |
|------|----------|
| ✕ | |

4. Advised my beneficiaries as to Government Requirements and Legal Safeguards.  (Marriage & Birth Certificates, etc.)

| Have | Have Not |
|------|----------|
| ✕ | |
| ✕ | |

5. Arranged for Joint Ownership of Property.

6. A joint checking account with Wife at ———.

service and while the insurance was in effect, Hartman was killed while on active duty in India. The foregoing facts are undisputed.

The defendants insist that the insured never formally changed his beneficiary. They contend that the "Form W.D., A.G.O. No. 41, 1941" was designed for use by the Adjutant General of the Army to change the beneficiary of "Gratuity Benefit Payment" and not to change the beneficiary in a National Service Life Insurance Policy. As to the latter contention, there is no dispute.

The insured had a right to change his beneficiary at any time he desired without the consent or knowledge of the beneficiary. 38 U.S.C.A. § 802(g).

An examination of the Act does not reveal any requirement as to any definite manner in which the insured must make his designation of change of beneficiary, but under authority granted to it by the Act, the Veterans Administration promulgated a regulation defining the manner in which such change shall be made.[4] In the absence of a compliance with such regulation, the burden is upon the plaintiff to

| | | |
|---|---|---|
| ✕ | | 7. Made a Class B Allotment for purchase of War Bonds. 18.75–Wife– |
| ✕ | | 8. Made a Class E. allotment to my wife, 300.00–wife–10/1/44 |
| ✕ | | 9. Executed a General Power of Attorney. |
| ✕ | | 10. Executed a Will. |
| | ✕ | 11. Suggested my wife make a Will. |
| | ✕ | 12. Suggested my wife buy life insurance on her life, or, change the beneficiary on her life insurance. |
| ✕ | | 13. Filled in AGO Form No. 43 (Emergency Addressee Record) on ——————. |
| | ✕ | 14. Filled in AGO Form No. 41 (Gratuity Beneficiary Record) on ——————. |
| | | 15. Received this check sheet, and, copies of booklets entitled "Personal Affairs" & "Benefit Guide". |
| ✕ | | 16. Personal Information file. |
| ✕ | | 17. Checked the list of requirements for foreign duty. |
| | | 18. Executed W.D. A.G.O. Form No. 625, "Application for Dependency Benefits". (Enlisted Men only) |

Social Security No. Unknown

———————————/s/ Addison B. Hartman
Signature

For information on any specific item listed above, write to the Personal Affairs Office at the above address. PAO Form No. 2

(4–44)

4 § 10.3447 Beneficiary changes. The insured shall have the right at any time, and from time to time, and without the knowledge or consent of the beneficiary to cancel the beneficiary designation, or to change the beneficiary within the class of beneficiaries set forth in § 10.3446. A change of beneficiary to be effective must be made by notice in writing signed by the insured and forwarded to the Veterans Administration by the insured or his agent, and containing sufficient information to identify the insured. Whenever practicable such notices shall be given on blanks prescribed by the Veterans Administration. Upon receipt by the Veterans Administration, a valid designation or change of beneficiary shall be deemed to be effective as of the date of execution: Provided, That any payment made before proper notice of designation or change of beneficiary has been received in the Veterans Administration shall be deemed to have been properly made and to satisfy fully the obligations of the United States under such insurance policy to the extent of such payments. (38 Code of Federal Regulations 1941 Supp.)

show valid change of beneficiary during the lifetime of the insured. Citron v. United States, D.C., 69 F.Supp. 830.

In order to meet this burden it is not necessary to show such change by positive evidence. It may be shown by circumstantial evidence as to his intent and as to his actions in carrying out such intent. To effect such a change the soldier need only to form an intention to make such change and do some affirmative act to effectuate his purpose. Citron v. United States, D.C., 69 F.Supp. 830; Woods v. United States, D.C., 69 F.Supp. 760.

In arriving at such a determination, it is clearly the duty of the Court to ascertain, if possible, the intention of the soldier and to see that such intention is carried out where it is possible to do so from the available evidence. In dealing with such matters and in passing on evidence respecting the conduct of men in the Service, we must not lose sight of the fact that they were undergoing most rigid training for the task ahead of them, and that they were living from day to day amid surroundings of uncertainty. This statement is borne out by the numerous places in which this insured served and executed documents and forms.

I think we may also take into consideration the indisputable fact that the use of forms is not lacking in any branch of the Government and that the Army has never been recognized as an exception in this respect. As heretofore stated, it is admitted that Form W.D.,A.G.O., No. 41, 1941, was intended for use by the Army to designate or change designation of beneficiary of gratuity benefit payments which were paid by the Army in case of the death of a soldier. But plaintiff contends that the form was also used in many places for changing beneficiaries in National Service Life Insurance policies, and to sustain her position she produced a witness, Sergeant Falls, a master sergeant, and a major during the war, and assigned to "personnel". This witness was not assigned to any camp in which the insured was stationed and had nothing to do with the execution of any of the forms here considered. But this witness testified that during 1941 and part of 1942 when he was Personnel Offi-

cer at the Boston Harbor and Defense Command, a W.D.,A.G.O., Form No. 41, similar to Plaintiff's Exhibit 3, had been used and considered by Army officers as the proper form for change of beneficiary of Government Life Insurance.

Sergeant Falls further testified that owing to the huge increase in the size of the Army following Pearl Harbor, the Army had been unable to get out any manual explanatory of the proper use of A.G.O. Form No. 41 until November 1942. The Veterans Administration, however, refused to accept Form W.D., A.G.O., No. 41, March 1941, as a change in beneficiary.

I thing the evidence clearly and indisputably shows that it was the intention of the insured to change his beneficiary almost immediately after his marriage. Within ten days he executed Form W.D.,A.G.O., heretofore mentioned. Although this form was intended for use by the Army and not by the Veterans Administration, an inspection of the form clearly fails to indicate its limitation to use for designating or changing the beneficiary of Gratuity Benefit payments. At no place in such form is there to be found any mention of Gratuity Benefit Payments. There is nothing in the wording of the form to prevent its use for changing the beneficiary in a National Service Life Insurance Policy. It is captioned "Designation of Beneficiary". There were written by typewriter in the form signed by the insured the words "Change In". The insured wrote in his own handwriting the name of his wife as his beneficiary. In every form the insured filled out after his marriage he referred to his wife as his beneficiary.

Further light is shed upon his intention by his statements concerning other insurance. Prior to entering the Armed Forces, Hartman took out a $500 policy in the Prudential Life Insurance Company naming his mother as beneficiary. In 1941 after entering the Army and while stationed at Fort Jackson, South Carolina, he took out another policy with the Prudential Life Insurance Company for $2,000, again naming his mother as beneficiary.

Shortly after executing Form W.D.,A. G.O., No. 41, March 1941, in response to a question by Clyde S. Mattison, Special

Agent for the Prudential Life Insurance Company, whether or not, in view of his marriage, he wanted to change his beneficiary in his Prudential Policies, the deceased replied that since his National Service Life Insurance was payable to his wife he wished his Prudential policies to remain payable to his mother. At the time that statement was made the only form relative to his insurance he had filled out was for W.D.A.G.O., No. 41, March 1941, aforesaid.

Aside from the numerous written forms filled out by the insured in which he mentioned his wife as beneficiary, probably the strongest evidence of his intention to change his beneficiary from his mother to his wife, are the statements of his mother to plaintiff shortly after his death that she heard her son say he wanted his wife to have the insurance.

The defendant Hartman wrote three letters to plaintiff in which she expressed the belief that her son intended that his wife should have the insurance. The pertinent excerpts are as follows:

" * * * The papers I got here yesterday said I was to get the $10,000 insurance but I took them over to Red Cross rooms and ask them to make a statement for me that I believed if the records were looked thro they would find that my son had ask that they be changed to you. I told them it should be on the records made in Aug. 1942 or sometime soon after * * *."

" * * * Honey have you heard anything about those papers. I filled them out because there could be nothing settled for you or me until the call card was returned filled out. So I filled it out but ask as a special favor for all records be traced to his differen (sic) fields and see if after 1942 they were'ent change to you—as I had heard him say he wanted you to get that insurance * * *."

" * * * Well Honey by now surely you have received your check. I signed final papers in your favor and they told me they thot I had been a loyal-sensible and level headed mother but they were going to continue search for his 1st papers as the last ones at Nashville had indicated the change * * *."

In view of these facts the conclusion that the insured intended to change his beneficiary after his marriage, and that after signing Form W.D.,A.G.O., No. 41 on August 31, 1942, he thought he had effectively done so is inescapable.

It is the duty of the Court to set aside legal and departmental technicalities in an effort to effectuate the intent of the insured. Woods v. United States, D.C., 69 F.Supp. 760; Citron v. United States, D.C., 69 F.Supp. 830.

Was the execution of Form W.D., A.G.O., No. 41 with the intention to change beneficiary sufficient? I think it was. To effectively make such change the soldier need only form the intention to do so, and do some affirmative act to effectuate his purpose. Collins v. United States et al., 10 Cir., 161 F.2d 64; Roberts v. United States, 4 Cir., 157 F.2d 906, 909; Rutledge v. United States et al., D.C., 72 F.Supp. 352.

Apparently, here, all of those elements were present. After signing the first W.D., A.G.O., Form No. 41, after his marriage, he designated his wife as beneficiary and his mother, who theretofore had been his principal beneficiary, as his contingent beneficiary. He referred to these parties in that manner in all future documents and statements.

That Form W.D.,A.G.O., No. 41 was used by soldiers with knowledge of camp authorities cannot be denied. Even if we disregard the evidence of the witness in this case that in the camps he had been in, that form, although not so intended to be used, was used to designate change in beneficiaries, we are cited to other cases in the courts where the form was used and its use upheld for that purpose. Woods v. United States, D.C., 69 F.Supp. 760; Citron v. United States, D.C., 69 F.Supp. 830.

In 1943 Form W.D.,A.G.O., No. 41, March 1941, was changed from "Designation or Change in Address of Beneficiary" to "Designation or Change of Relative to be Paid Six Months' Gratuity in Case of Death". A subheading stated: "Important: This form does not pertain to insurance". This is the first time there was any wording in Form 41 which indicated its exclusive

234

use for designating the beneficiary of gratuity benefits.

█ It was not necessary for the insured to comply strictly with the Veterans Administration's Regulations. The Court will treat as done what the insured intended to be done if the insured did everything he reasonably could be expected to do to accomplish his purpose. Collins v. United States et al., 10 Cir., 161 F.2d 64; Roberts v. United States, 4 Cir., 157 F.2d 906, 909; Citron v. United States, D.C., 69 F.Supp. 830.

The insured intended to change his beneficiary from his mother to his wife. In executing Form W.D.,A.G.O., No. 41, March 1941 he thought he had effectively done so. He did all he could do to effectuate the change and what he did was sufficient.

Plaintiff is the beneficiary and is entitled to the benefits.

It is so ordered.